COMMONWEALTH *vs.* GEORGE C. ASSAD. April 5, 1985. *Practice, Criminal,* Assistance of counsel, Required finding. *Intent.*

Upon the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty (Mass.R.Crim.P. 25[a], 378 Mass. 896 [1979]), and the motion was denied. That denial presents the first ground of appeal. A second ground is that the defendant's trial counsel so ineptly handled a motion to suppress pretrial photographic and corporeal identifications that the defendant was deprived of effective assistance of counsel. The defendant was convicted by a jury of: (1) assault with a dangerous weapon in a dwelling house with intent to rob (see G. L. c. 265, § 18A); (2) breaking and entering in the daytime with intent to commit a felony (see G. L. c. 266, § 18); and (3) using a device which contains a substance designed to incapacitate for the purpose of committing an armed assault in a dwelling house (see G. L. c. 269, § 10C).

1. *The motion for a required finding of not guilty.* At the close of the Commonwealth's evidence the jury might rationally have found the following. Hem Jew let himself into his locked apartment shortly before 8:00 A.M. on August 28, 1980, and surprised two strangers. Alarmed,

Jew raised a hand and backed up two steps. One of the strangers, clad in a football shirt, followed him, sprayed him with a liquid which Jew took to be mace, and knocked him down. Jew fainted but came to after what he thought was a few seconds. His assailants had vanished, and Jew went down to the lobby where he encountered two building maintenance men whom, with understandable agitation, he told what had happened. One of the maintenance men, David Ryan, had noticed two strangers earlier. Upon Jew's alert, Ryan and the other maintenance man gave chase by car. They spotted the suspects driving the "wrong way" out of the parking lot and the "wrong way" up a one-way street. The chase did not go far because, Ryan testified, "I wasn't going to go up the one-way street like they did."

Both Ryan and Jew had made identifications of the defendant from photographic arrays they had examined during the first week of November, 1980. Each also identified the defendant in court.

When defense counsel argued his motion for a required finding of not guilty in the trial court, his focus was entirely on an alleged failure by the Commonwealth to prove what substance had been sprayed at Jew. We are quite satisfied that the jury could, from Jew's testimony that he had experienced momentary difficulty seeing, infer that the spray device was one which, in the statutory language, "contains a liquid . . . designed to incapacitate." G. L. c. 269, § 10C, as appearing in St. 1974, c. 789. On appeal, appellate counsel urges a quite different ground: that there was no evidence of intent to rob. Ordinarily we would not be obliged to consider an argument not put before the trial court, *Commonwealth* v. *Scala*, 380 Mass. 500, 510 (1980), unless the point raises the possibility of a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). Such a risk may be inherent in the claim of insufficient evidence. In any event, as Mass.R.Crim.P. 25(a) provides that a trial judge "on his own motion shall enter a finding of not guilty of the offense charged in an indictment or complaint . . . if the evidence is insufficient as a matter of law to sustain a conviction on the charge," we examine the required finding of not guilty motion on the ground now put forth.

The reasonable inference from the evidence, the defendant argues, is that the defendant used the spray can to facilitate an escape from the victim's apartment, not to steal from the victim or in his presence by putting him in fear, i.e., with the intent to rob the victim. See *Commonwealth* v. *Jones*, 362 Mass. 83, 87 (1972), and cases and authorities cited. Compare *Commonwealth* v. *Davis*, 7 Mass. App. Ct. 9, 11-12 (1979).

It was certainly open to the jury to infer that the two men who had broken into an apartment were there to steal. *Commonwealth* v. *Shedd*, 140 Mass. 451, 453 (1886). That those men armed themselves with chemical spray devices permits — if it does not compel — the inference that they were prepared to disable (albeit in a comparatively benign fashion) any person who should interfere with the completion of their felonious task. In this case that person was Jew, who by entering his apartment and, as he

testified, being placed in fear converted the larceny, stealing, to a robbery. *Commonwealth* v. *Jones, supra*. The failure to prove what, if anything, was taken is inconsequential because the indictment did not charge a completed robbery, but, rather, an intent to rob. It is not wholly implausible to deduce, as the defendant would have us do, that Jew's interruption of the defendant and his accomplice caused them to abandon the felonious enterprise and to concentrate on escape. Our task, however, is to review the evidence in a light most favorable to the government, *Commonwealth* v. *Campbell*, 394 Mass. 77, 82 (1985), and on that basis the evidence supports an inference that the assault on Jew was connected to the objective of stealing property from his apartment. *Commonwealth* v. *Williams*, 312 Mass. 553, 557 (1942). *Commonwealth* v. *Correia*, 17 Mass. App. Ct. 233, 237 (1983). The motion for a required finding was rightly denied.

2. *Ineffective assistance of counsel.* Before trial the defendant moved to suppress the identification made from a photographic array by Ryan, one of the maintenance men. The motion was denied by a judge other than the one who presided at the trial. Appellate counsel makes a multi-faceted attack on trial counsel's presentation of the suppression motion. First, he attributes denial of the motion to counsel's failure to support his motion to suppress, as required by Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979), with an affidavit "detailing all facts relied upon in support of the motion and signed by a person with personal knowledge of the factual basis of the motion." Even if noncompliance with the rule were, in some instances, to be regarded as a lapse so serious as to constitute ineffective assistance of counsel, cf. *Commonwealth* v. *Pope*, 392 Mass. 493, 499 (1984), omission of the affidavit was of no consequence because the motion judge astutely permitted defense counsel to state the facts he thought most compelling in favor of suppression. The flaw in the identification procedure on which defense counsel pitched his attack was that the police had not included in the second array given to Ryan for inspection a photograph from the first array which Ryan had identified as looking much like the defendant. Omission of that picture, however, did not suggest selection of the defendant's picture as that of the assailant, and the judge acted well within his discretion in refusing to suppress Ryan's photo identification on that ground.

A second ground for suppression emerges only on appeal. The defendant argues that a corporeal identification by the victim of the defendant prior to the probable cause hearing was constitutionally defective because is was made at the request of and in the presence of a police officer without notice to counsel. See *Moore* v. *Illinois*, 434 U.S. 220, 231 (1977); *Commonwealth* v. *Donovan*, 392 Mass. 647, 649-651 (1984). As to "showup" identifications containing the elements just recited and which take place after the commencement of judicial proceedings, a per se rule of exclusion applies because the defendant has been deprived of the right to counsel guaranteed by the

Sixth Amendment. *Ibid.* See and compare *Commonwealth* v. *Key, ante* 234, 237-241 (1985).

In the case at bar, however, the factual basis for exclusion is far from established. On the record there is considerable doubt that Jew's identification· of the defendant before the probable cause hearing was made at the request of a police officer and in the presence of one. There is testimony of the victim that a detective said to him at the courthouse, "See if you can recognize the man there who beat you up." Detective Bergeron of the Quincy police, on the other hand, testified that Jew had looked around the courthouse lobby on his own initiative and reported back to Bergeron that he had spotted the defendant in the crowd. Cf. *Commonwealth* v. *Napolitano,* 378 Mass. 599, 604 (1979), and *Commonwealth* v. *Cincotta,* 6 Mass. App. Ct. 812, 818 (1979). The apparent conflict in the testimony was never probed because the circumstances of the identification of the defendant prior to the probable cause hearing was not an issue. While it might have been a vein worth mining for the defense, we are not prepared to say that either missing or passing up the opportunity fell "measurably below [what] might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Defense counsel reasonably elected to concentrate on weaknesses in Jew's identification testimony at the probable cause hearing itself, rather than running the risk of underscoring what may have been a spontaneous identification of the defendant by the victim before the hearing began.

*Judgments affirmed.*

*Steven J. Rappaport* for the defendant.
*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.