COMMONWEALTH vs. PASQUALE CARDENUTO.

Hampden. October 2, 1989. - January 16, 1990.

Present: LIACOS, C.J., WILKINS, NOLAN, & LYNCH, JJ.

*Practice, Criminal*, Assistance of counsel, New trial, Double jeopardy.
*Constitutional Law*, Assistance of counsel, Double jeopardy. *Waiver.*

Where evidence introduced at the trial of a criminal case was insufficient
to sustain the defendant's conviction on an indictment charging arson,
defendant's trial counsel's failure to appeal the denial of the defend-
ant's motions for required findings of not guilty amounted to ineffective
assistance of counsel. [453-457]
Where the evidence introduced by the Commonwealth at the trial of a
criminal case was insufficient to sustain the defendant's conviction on
an indictment charging arson, retrial of the defendant was barred by
principles of double jeopardy; furthermore, in the circumstances of this
case, the defendant did not waive the double jeopardy argument even
though his trial counsel failed to raise on a prior appeal the double
jeopardy argument that, if the evidence was insufficient to sustain the
conviction, the defendant could not be retried. [457]

INDICTMENT found and returned in the Superior Court De-
partment on October 7, 1983.

A motion for postconviction relief, filed on June 16, 1988,
was heard by *Elizabeth A. Porada*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Elizabeth R. Dunphy*, Assistant District Attorney, for the
Commonwealth.

*Keith S. Halpern* (*Andrew H. Good* with him) for the
defendant.

NOLAN, J. On March 19, 1985, the defendant, Pasquale
Cardenuto, was convicted of arson and of burning insured
property with intent to defraud an insurer. A Superior Court
judge allowed Cardenuto's motion for postconviction relief by

granting a new trial, and the Commonwealth appeals. Mass.
R. Crim. P. 30 (c) (8), 378 Mass. 900 (1979). Cardenuto
has filed a notice of cross appeal and a motion for dismissal
or acquittal. We transferred the case to this court on our own
motion.

On March 15, 1983, a fire destroyed the building which
housed the defendant's restaurant in Westfield. As a result of
this fire, the defendant and Joseph Yamin,[1] were indicted
and charged with arson in violation of G. L. c. 266, § 2
(1988 ed.). Cardenuto, in addition to being charged with ar-
son, was charged with burning insured property with the in-
tent to defraud an insurer in violation of G. L. c. 266, § 10
(1988 ed.). Cardenuto and Yamin were tried together before
a jury. At the close of the Commonwealth's case and, again,
at the close of all the evidence, Cardenuto's trial counsel
moved for a required finding of not guilty. The judge denied
both motions.[2] The evidence was submitted to the jury and
the jury found Cardenuto guilty of both crimes. The same
jury acquitted Yamin.

After his conviction, but before sentencing, Cardenuto's
trial counsel moved for a new trial pursuant to Mass. R.
Crim. P. 30 (b), 378 Mass. 900 (1979).[3] Before the hearing
on the defendant's motion, however, the defendant was sen-
tenced to the Massachusetts Correctional Institution, at
Cedar Junction, to a term of from six to ten years on the
arson conviction.[4] The judge stayed execution of the sen-

---

[1] The Commonwealth's theory at trial was that Cardenuto, in closing the
restaurant, deliberately left the restaurant's back door open so that Yamin
could enter and set the fire.

[2] It is significant to this appeal that Cardenuto's trial counsel never ap-
pealed the judge's denial of these motions.

[3] On the night of Cardenuto's conviction, Cardenuto's brother-in-law,
Nicola Robustelli, confessed to Cardenuto's trial counsel that he, unknown
to the defendant, had set the fire in revenge for mistreatment by
Cardenuto. Cardenuto's trial counsel moved for a new trial under Mass. R.
Crim. P. 30 (b), based on this newly discovered evidence.

[4] At the Commonwealth's request, the judge dismissed the conviction of
burning insured property with intent to defraud an insurer. See *Common-
wealth* v. *Shuman*, 17 Mass. App. Ct. 441, 449-452 (1984).

tence, pending hearing and ruling on Cardenuto's motion for a new trial. After the hearing, the judge denied the motion.[5] The Appeals Court affirmed the judge's denial. *Commonwealth* v. *Cardenuto*, 24 Mass. App. Ct. 1113 (1987). It was at this point that Cardenuto obtained new counsel (his current counsel) who sought further appellate review of the judge's refusal to grant a new trial. This court denied the defendant's request for further appellate review. 401 Mass. 1101 (1987).

On June 16, 1988, Cardenuto, through current counsel, filed a second motion for postconviction relief in the Superior Court. As grounds for this second motion, Cardenuto claimed that his trial counsel was ineffective at trial and on direct appeal,[6] in failing to appeal the denial of his motions for a required finding of not guilty. Cardenuto also claimed that his trial counsel ineffectively represented him at the hearing on Cardenuto's first motion for a new trial.[7]

The second motion judge found that Cardenuto's trial counsel effectively represented Cardenuto at trial. She further found, however, that trial counsel's failure to appeal the denial of his motions for a required finding of not guilty amounted to conduct which fell "below that of the ordinary fallible lawyer and which indeed did result in substantial prejudice to the defendant."

The second motion judge also found that trial counsel was ineffective at the hearing of Cardenuto's first motion for a new trial. The Commonwealth contends that, since

---

[5]The judge who heard the motion (the same judge who presided over the trial), in essence, did not believe Robustelli.

[6]After moving for a new trial, Cardenuto's trial counsel also filed a direct appeal. Both parties concede that, in his direct appeal, Cardenuto's trial counsel did not raise the issue whether the trial judge properly denied the defendant's motions for a required finding of not guilty. The defendant contends that the Commonwealth presented insufficient evidence to sustain the conviction and the failure to raise this issue on appeal amounted to ineffective assistance of appellate counsel.

[7]The second hearing was held before a new judge due to the retirement of the trial judge who had also presided over the hearing on the defendant's original motion for a new trial.

Cardenuto had no right to effective assistance of counsel at his motions for a new trial, the judge erred in concluding that trial counsel's performance at the hearing on the motion deprived Cardenuto of this right. Because we reverse on other grounds, we need not address the issue of whether the defendant had a right to counsel at the hearing on his motion for a new trial.

Although the motion judge did not make a finding that there was insufficient evidence to warrant the jury's verdict, she did state that "a motion for a required finding of not guilty based upon the evidence in this case was of arguable merit. It has more than a minimal chance of success." The motion judge granted Cardenuto a new trial. We agree with the motion judge's conclusion that trial counsel's failure to appeal the denial of the motions for required findings of not guilty amounted to ineffective assistance of counsel. In so doing, we conclude that there was insufficient evidence to sustain the jury's verdict. Accordingly, we hold that trial counsel's failure to appeal the denial of the motions for a required finding of not guilty amounted to ineffective assistance of counsel.

1. *Effective assistance of counsel.* Cardenuto contends that because his trial counsel failed to argue on appeal that there was insufficient evidence to sustain the verdict, Cardenuto was denied effective assistance of counsel under the Sixth Amendment to the United States Constitution and under the State Constitution. The defendant asserts, in essence, that, had his trial counsel appealed the denial of these motions, the reviewing court would have determined the evidence to be insufficient to support the jury's verdict, his conviction would have been reversed and retrial would be barred by double jeopardy.

Cardenuto had a right to the effective assistance of counsel on his direct appeal. See *Douglas* v. *California,* 372 U.S. 353, 355-356 (1963). The standard for determining effective assistance of counsel under the State Constitution is set forth in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), and requires "a discerning examination and appraisal of the spe-

cific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence."[8] *Id.*

As we view this case, if the evidence introduced at trial was insufficient to sustain the conviction, trial counsel's failure to argue this issue on appeal necessarily amounted to ineffective assistance of counsel.

We turn to the sufficiency of the evidence. On this issue we consider the evidence up to the time the Commonwealth rested its case and the defendant first moved for a required finding of not guilty.[9] To sustain the denial of Cardenuto's motions for a required finding, we must determine that a rational trier of fact viewing the evidence in the light most favorable to the Commonwealth could be satisfied of the existence of each element of the offense beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

---

[8]This court's review of the defendant's claim under the Sixth Amendment would be governed by the standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard, the defendant must first show that "counsel's performance was deficient" in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense" in that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

The defendant here claims that he was deprived of both his Federal and State constitutional rights to effective assistance of counsel. In considering the Massachusetts test of ineffectiveness of counsel, as set forth in *Commonwealth* v. *Saferian, supra* at 96, we have said that, if the *Saferian* test is met, the *Strickland* test is necessarily met as well. See *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985). We accordingly examine the defendant's challenge on the basis of the *Saferian* standard. We leave open the question what differences, if any, exist between the two standards.

[9]The Commonwealth's position as to proof did not deteriorate between the time the Commonwealth rested its case and the close of all the evidence. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976).

The Commonwealth presented evidence at trial that the
fire was incendiary and that gasoline was the accelerant used
to start the fire. Cardenuto was the sole owner of the build-
ing. Fire fighters responding to the scene discovered the back
door of the restaurant unlocked and open. There were no
signs of forced entry into the building. There was no theft of
monies from the restaurant's cash registers or safe or any
loss of valuables from the contents of the building.
Cardenuto and his mother and father were the only people
with keys to the premises. Cardenuto never lent his keys to
anyone. Cardenuto was the last person in the restaurant
before the fire and remembered bolting the back door of the
restaurant as well as locking the front door that night. At
approximately 11:15 P.M., Cardenuto left with the codefend-
ant, Yamin, for an area bar, The Grove, about four miles
from Cardenuto's restaurant. Before they arrived at The
Grove, however, they returned to the restaurant so that
Cardenuto could deposit the night's receipts in the restau-
rant's safe. After Cardenuto deposited the receipts, the two
left for The Grove.[10]

---

[10]Cardenuto and Yamin, however, were present at the scene of the fire
shortly after its outbreak. In explaining their presence at the scene, Yamin
testified that he and Cardenuto were driving back from The Grove to meet
two of Cardenuto's friends at "Simon's," another area bar, when they no-
ticed the smoke and drove over to investigate. The two friends, Deborah
Tobias and Laura Liberty, had visited Cardenuto at his restaurant the
night of the fire. Cardenuto had invited the women to join him at The
Grove. The women, however, declined, and went with other friends to Si-
mon's. However, there was testimony to the effect that the two women
planned to meet Cardenuto later that night at The Grove. The Common-
wealth asserts that this evidence revealed that Cardenuto's presence at the
scene of the fire was inconsistent with his plan to wait for the women at
The Grove. The Commonwealth's theory at trial, however, was that
Cardenuto left the back door of the restaurant unbolted when he closed
the restaurant that evening so that Yamin could subsequently enter and
set the fire. It is unclear how Cardenuto's presence at the scene of the fire
shortly after its outbreak assists a rational trier of fact in determining
Cardenuto's guilt. The Commonwealth's theory was not that Cardenuto,
himself, set the fire but that Cardenuto left the back door unbolted so that
Yamin could enter and set the fire. We do not believe that the fact that
Cardenuto was at the scene of the fire shortly after its outbreak assists the

There was also evidence of increased competition for Cardenuto's restaurant. A Papa Gino's restaurant had opened a short distance away in February, 1983. Thus, including Papa Gino's, there were at least five pizza parlors within a two-mile vicinity of the Elm Street area of Westfield. Finally, there was evidence that Cardenuto had increased his insurance coverage on the building from $180,000 to $300,000. At that time, Cardenuto told his insurance agent that he was concerned about the replacement cost on the building in case of a "total loss." There was also evidence that in December of 1982, Cardenuto requested that his insurance agent increase the insurance on the building to $400,000. After an appraisal, the coverage on the building was decreased to $230,000 for the building and the coverage on the contents of the building was increased from $40,000 to $64,000.

We hold that the evidence was insufficient to warrant the guilty verdict. Although circumstantial evidence is competent evidence to establish guilt, see *Commonwealth* v. *Rojas*, 388 Mass. 626, 629 (1983), we believe the evidence in this case does not rise to the level necessary to sustain a guilty verdict. The second motion judge correctly noted that there was no evidence that would place Cardenuto at the scene of the fire at the time of its outbreak; there was no evidence that he had asked or entered into an agreement with anyone to set fire to the building; there was no evidence that he made any statements or was guilty of any conduct amounting to consciousness of guilt; and there was no evidence that he made any false or misleading statements relative to the investigation of the fire. Moreover, there was no evidence that the defendant was experiencing serious financial problems. Contrast *Commonwealth* v. *DeStefano*, 16 Mass. App. Ct. 208, 216-217 (1983) (evidence of concealment and misleading statements by defendant); *Commonwealth* v. *Ward*, 14 Mass. App. Ct. 37, 39-41 (1982) (defendant experienced financial problems,

---

fact finder in finding that Cardenuto left the back door unbolted so that Yamin could subsequently set the fire.

was in the building shortly before the fire's outbreak and made misleading statements); *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 260 (1980) (defendant made misleading statements to police and was near building shortly before fire). Accordingly, we hold that the evidence presented by the Commonwealth in this case was insufficient to sustain the guilty verdict.

2. *Double jeopardy.* The defendant contends that if the evidence introduced at trial was insufficient to sustain the guilty verdict, retrial is barred by the principles of double jeopardy pursuant to *Burks* v. *United States*, 437 U.S. 1, 18 (1978). We agree.[11]

In sum, because the evidence introduced by the Commonwealth was insufficient to sustain the defendant's conviction, retrial is barred by the principles of double jeopardy. See *id.* Accordingly, the motion judge's order granting a new trial is vacated. The judgment of conviction is reversed, the verdict set aside, and the case is remanded to the Superior Court for entry of a judgment of acquittal.

*So ordered.*

---

[11]We hold today that trial counsel's failure to argue the sufficiency of the evidence on appeal amounted to ineffective assistance of counsel. It, of course, follows that this same trial counsel failed to raise on appeal the double jeopardy argument that, if the evidence was insufficient to sustain the conviction, Cardenuto could not be retried. See *Burks* v. *United States*, 437 U.S. 1, 18 (1978) (double jeopardy clause precludes a second trial once reviewing court has found evidence legally insufficient); *Commonwealth* v. *Funches*, 379 Mass. 283, 294-297 (1979). We hold that the defendant, in the circumstances of this case, did not waive the double jeopardy argument. But see *Commonwealth* v. *Deeran*, 397 Mass. 136, 139 (1986) (defendant waived double jeopardy argument where not raised in motion for postconviction relief).