## COMMONWEALTH *vs.* GLENN J. LUGO.

No. 04-P-418.

Plymouth. February 10, 2005. - March 29, 2005.

Present: CYPHER, COWIN, & GRAHAM, & JJ.

*Burning a Dwelling House. Practice, Criminal,* Required finding. *Evidence,* Expert opinion.

At the trial of an indictment charging burning a dwelling, there was ample evidence of motive, of exclusive opportunity, and of a fire intentionally set; therefore, the judge properly denied the defendant's motion for a required finding of not guilty. [206-207]

The judge at the trial of an indictment charging burning a dwelling properly admitted testimony from an expert witness that the fire was intentionally set, where the expert's conclusion could not reasonably be construed as an opinion of the defendant's guilt or innocence, and where the judge gave the jury appropriate instructions regarding their consideration of that testimony. [207-209]

INDICTMENTS found and returned in the Superior Court Department on August 21, 2000.

The cases were tried before *Geraldine S. Hines,* J.

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Audrey Anderson Kachour,* Assistant District Attorney, for the Commonwealth.

GRAHAM, J. Following a jury trial, the defendant was found guilty of burning a dwelling, assault and battery by means of a dangerous weapon, assault and battery, and assault by means of a dangerous weapon. On appeal, he alleges that the trial judge erred in (1) denying his motion for a required finding of not guilty on the charge of burning a dwelling, and (2) allowing the Commonwealth's expert to give his opinion on an ultimate issue in the case. We affirm.

*Background.* The jury could have found the following facts.

On July 1, 2000, at approximately 8:45 P.M., the defendant went to the apartment of an acquaintance, Brenda Gonsalves, with a "30-pack" of beer. Gonsalves was at home with her sixteen year old son Brandon, his girlfriend Erica, and the family dog. Over the course of about two and one-half hours, the defendant consumed eight or nine beers, became intoxicated, and was asked to leave. Approximately three hours later, the defendant returned to the apartment with a friend, Matthew Steele. Once inside the apartment, the defendant became belligerent, demanded the return of his remaining beer, and again was asked to leave. This time a fight ensued. The defendant backed Gonsalves into the kitchen and shoved her into the stove. Then, Brandon punched the defendant in the face. In response, the defendant produced a knife and threatened to kill everyone in the apartment. Brandon and Matthew fled, with the defendant in pursuit of them.

A short time later, the defendant returned to the apartment and confronted Gonsalves. Ignoring her attempts to placate him, the defendant assaulted Gonsalves, cutting her on the arm with the knife. Gonsalves and Erica fled the apartment and hid in some bushes near the apartment building.

After about twenty minutes, the defendant left the apartment building and walked up the street. As he walked, Gonsalves heard the defendant saying, "That's all right. They fucking got what they deserved. . . . And I threw that fucking dog, Good Boy, out the window." The defendant also began calling out for Brandon and Matthew, accusing them of being cowards and afraid to fight him.

Brandon returned to the apartment building and located his mother and Erica. After seeing the injury to his mother, Brandon and a neighbor attracted to the building by the late night noise chased the defendant, who ran up the street. The defendant ran into a fire station and was later found by police officers, hiding under a pile of clothes. He was arrested and transported to the police station for booking.

Gonsalves and Erica, meanwhile, returned to the apartment. As they entered, they saw smoke coming from the kitchen. Within minutes flames were shooting from the kitchen window. Gonsalves and Erica escaped by climbing down the fire escape. Shortly thereafter fire fighters arrived and extinguished the fire.

Sergeant Douglas Lynch, a fire investigator with the State fire marshal's office, examined the scene of the fire and ruled out all accidental causes. He determined, and at trial testified, that the fire was incendiary and intentionally set. The fire had started in a white trash barrel located in the center of the doorway in the kitchen. The barrel, normally kept by the stove, had melted down to floor level. Within eight to ten minutes after the barrel had been ignited, Lynch testified, the smoke and flames would have reached and breached the kitchen and bedroom windows.

Detective Timothy Stanton of the Brockton police department interviewed the defendant as part of his investigation of the fire. When he was arrested, the defendant, a nonsmoker, was carrying a cigarette lighter that he claimed to have found. The defendant appeared very nervous when questioned about the lighter, but denied doing anything that could have caused the fire. He recalled returning to the apartment, but could not remember starting or lighting anything during the time he was there.

*Discussion.* 1. *Sufficiency of the evidence.* The defendant contends that the judge should have allowed his motion for a required finding of not guilty on the charge of burning a dwelling. Upon review, we consider the evidence up to the time the Commonwealth rested its case and the defendant moved for a required finding of not guilty. *Commonwealth* v. *Cardenuto*, 406 Mass. 450, 454 (1990).

Proof of arson is usually based on a "web of circumstantial evidence," *Commonwealth* v. *Robinson*, 34 Mass. App. Ct. 610, 617 (1993), because arsonists are "furtive criminals." *Commonwealth* v. *Jacobson*, 19 Mass. App. Ct. 666, 674 (1985). Whether the defendant committed arson depends upon the inferences that the jury reasonably could have drawn from the evidence. *Commonwealth* v. *Mezzanotti*, 26 Mass. App. Ct. 522, 525 (1988). "It is not required that the inferences be unescapable or necessary; it is enough if they are not too remote . . . ." *Ibid.*, quoting from *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928).

Viewing the evidence in the light most favorable to the Commonwealth, considering all the circumstances and making ap-

propriate inferences, we determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Cordle*, 412 Mass. 172, 175 (1992). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

The defendant returned to the Gonsalves home at approximately 2:30 A.M., intoxicated and upset, believing that his beer had been stolen. After shoving Gonsalves, he was punched in the face by her son Brandon. The defendant later used a knife to cut Gonsalves and chase all of the occupants out of the apartment. The defendant then was alone in the apartment with motive and opportunity to commit the crime.

When he left the house after threatening to kill everyone therein, the defendant was heard saying that Gonsalves and the others "got what they deserved." In addition, ten minutes after the defendant left the apartment building, smoke was observed coming from the kitchen area, and shortly thereafter, flames were observed coming through the kitchen window.

The Commonwealth's expert ruled out accidental causes of the fire and concluded that the fire was incendiary in nature, and that its origin was the trash barrel that had been moved from its original position to the center of the door frame. Furthermore, the defendant was the only person with any realistic opportunity to set such a rapidly spreading fire.

In sum, there was ample evidence presented of motive, exclusive opportunity, and of a fire intentionally set. The judge did not err in denying the defendant's motion for a required finding of not guilty.

2. *The expert testimony.* The Commonwealth presented evidence through Sergeant Lynch that the fire was intentionally set. The defendant asserts that the judge's failure to exclude this testimony was error because the testimony impermissibly invaded the jury's consideration of one of the ultimate issues in the case, i.e., whether the fire had been wilfully set.

"The admission of expert testimony rests in the broad discretion of the judge and will not be disturbed unless the exercise of that discretion constitutes an abuse of discretion or error of law." *Commonwealth* v. *Pike*, 430 Mass. 317, 324 (1999), and cases cited. The traditional opinion rule precludes a witness

from giving an opinion on the ultimate issue in a case. The purpose of the rule is to preclude a witness from giving an opinion as to the legal significance of facts in issue in such a fashion as to invade the province of the jury. See, e.g., *Commonwealth* v. *Coleman*, 366 Mass. 705, 711 (1975). The rule has been relaxed in recent years, however, and the Supreme Judicial Court has held that in cases involving expert testimony, an expert may testify on matters within his or her field of expertise whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the jury must decide. See *Commonwealth* v. *Cruz*, 413 Mass 686, 689-691 (1992). See also Liacos, Brodin, & Avery, Massachusetts Evidence § 7.3.1, at 373 (7th ed. 1999).

An expert's opinion that touches on the ultimate issues before the jury is generally admissible as long as the expert does not offer an opinion as to the defendant's guilt or innocence. See *Commonwealth* v. *Zavala*, 52 Mass. App. Ct. 770, 775 (2001), citing *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982). In addition, when opinion testimony on the ultimate issue is permitted, the trial judge should instruct the jury that the witness's interpretation is not dispositive of the matter. *Commonwealth* v. *Henderson*, 434 Mass. 155, 160 n.9 (2001).

One of the elements that the Commonwealth had to prove was that the fire had been wilfully set. See *Commonwealth* v. *McLaughlin*, 431 Mass. 506, 512 (2000). "Whether or not a fire is incendiary in origin is not generally a matter within the scope of common knowledge of an ordinary juror." *Commonwealth* v. *Rhoades*, 379 Mass. 810, 818 (1980). See *Commonwealth* v. *Grammo*, 8 Mass. App. Ct. 447, 453 (1979) (proper to admit expert testimony that fire was incendiary in nature); *Commonwealth* v. *Goodman*, 54 Mass. App. Ct. 385, 391 (2002) (testimony of fire inspector that fire was deliberately set held admissible).

After Sergeant Lynch opined to the jury that the fire was intentionally set, the judge informed the jurors that they would be given instruction on how to consider expert testimony, that they were the ultimate judges of the facts in the case, and that the testimony they heard was merely an opinion which they could accept or reject. Sergeant Lynch did not offer his opinion

as to the guilt or innocence of the defendant. His conclusion that the fire was intentionally set cannot reasonably be construed as an opinion of the defendant's guilt or innocence. There was no error.

*Judgments affirmed.*